JERRY F. GRINDLE *vs.* SCHOOL DISTRICT No. 1 IN BROOKSVILLE.

*School district alterations—how made. R. S., c.* 11, § 1.

It is not necessary that the recommendation of the municipal officers, required by R. S., c. 11, § 1, as a condition precedent to any vote of the town to alter or discontinue school districts, should indicate the precise changes to be made; but it may be in general terms.

A vote of a town to discontinue one district, and to annex its territory to others, is not void because of an omission to make any provision about the disposition of the school house on the territory of the district discontinued.

The town of Brooksville voted, "to divide school district No. 2, and annex Mark H. Grindle and all northwest to school district No. 3, and the remainder of No. 2 district to district No. 1." It appeared that Mark H. Grindle lived upon the homestead in district No. 2, owned by him, and so situated with reference to the boundaries of that district that it practically divided all the land in the district, northwest of his farm, from the rest of the district: *held,* that the reference to Mark H. Grindle, in the vote aforesaid, should be understood to mean the homestead owned and occupied by him.

ON REPORT.

ASSUMPSIT, on a count for money had and received, to recover the amount assessed upon the plaintiff by the assessors of Brooksville, in 1872, in behalf of school district No. 1, in that town, and paid by him under protest, January 27, 1873. The writ was dated March 6, 1873, and the money was actually paid over by the collector to the town treasurer on that day, some hours after the writ was filled.

At their annual meeting in March, 1872, the inhabitants of Brooksville passed the vote mentioned in the syllabus and in the opinion, basing this action upon the following "statement of facts in regard to school district No. 2 in the town of Brooksville," which was signed by the school committee and a majority of the selectmen: "Having been requested to approve a request to divide and discontinue school district No. 2, and annex it to districts Nos. 1 and 3; we do hereby approve, and give the following statement of facts. The school house has become entirely unfit to keep a school in, and the number of scholars in the district at present, and the

prospect for the future do not seem to warrant the building of a new house, or repairing the old one." The article in the warrant calling the meeting having reference to this subject was couched in the same phraseology as the vote upon it. This cause was submitted upon the facts to the disposition of the court.

Mark H. Grindle also brought suit against Mr. Hawes, the collector, for proceedings to enforce payment of the tax assessed upon him in the district to which he was attached by this vote; in which action a nonsuit was ordered upon the ground that the warrant under which the defendant acted was his protection, he having acted in strict conformity to it; according to *Nowell* v. *Tripp*, 61 Maine, 426. Other objections made by Jerry F. Grindle to the action of the town, in assuming to divide up the old school district No. 2, are noticed in the opinion.

*Hale & Emery* for the plaintiff.

I. The statute contemplates that the municipal officers and school committee shall mature some particular mode of division and submit it to the action of the town, for approval or rejection; not that merely a division shall be recommended, the details of which are to be determined in a tumultuous annual town meeting. The town cannot adopt a division differing from the one proposed. It cannot be seen here whether the town made such a division as the proper authorities approved, or not.

II. There were no conditions, proper or otherwise, annexed to this division. Nothing done about the school house.

III. The vote was ineffectual. *Worthington* v. *Eveleth*, 7 Pick., 106; *Nye* v. *Marion*, 7 Gray, 244.

IV. The money was in the hands of the town's agent, whether it was collector or treasurer.

*C. J. Abbott* for the defendants.

When this suit was brought, the defendants had none of the plaintiff's money. *Smith* v. *Readfield*, 27 Maine, 145; *Haynes* v. *School District*, 41 Maine, 246; *Starbird* v. *School District*, 51 Maine, 101; *Look* v. *Industry*, Id., 375.

PETERS, J.   We think that none of the objections, urged against the validity of the proceedings of the town in this case, should be sustained.

The first objection taken is, that the recommendation of the town officers, in favor of a discontinuance of one district and the annexation of its territory to others, was insufficient, because it did not contain a description of the particular portions to be respectively annexed.   The statute provides that school districts shall not be altered, discontinued, or annexed to others, except upon a recommendation of the municipal authorities.   It does not require the definite and exact results of a contemplated change to be given.   The recommendation may be in general terms.   The town may then settle the details as it pleases.   The question does not arise here whether the town could make an alteration in one way when it had been recommended in another.   In this case the action of the town was not in any respect in conflict with the recommendation of its municipal officers.

The next objection is, that it does not appear by the vote of the town that the requirement of the statute was observed, which provided that a discontinuance of a district may be made "on conditions proper to preserve the rights and obligations of its inhabitants."   But it does not appear to the contrary.   No action relative to the school house was necessary as a condition of discontinuance.   Sufficient provision for the disposition of that property is found in R. S., c. 11, § 3.   And by the same section, the corporate powers and liabilities of a district remain after discontinuance, so far as may be necessary for the enforcement of its rights and duties.

Another objection, much relied upon by the plaintiff, is, that the vote of the town is ineffectual to create an alteration of the districts, because, as he contends, it does not describe by geographical boundaries the alterations designed to be made.   The vote was, "to divide school district No. 2, and annex Mark H. Grindle and all northwest to district No. 3, and the remainder of said No. 2 district to district No. 1."   From the statement of facts it is

Grindle *v.* School District No. 1.

clear that this description would be definite enough and well understood, if the reference to "Mark H. Grindle" could be regarded as identifying the homestead owned and occupied by him, and not as a personal description merely. The plaintiff relies upon cases in this State and Massachusetts, where it has been decided that a school district should be established or divided by geographical bounds, and that setting off individuals by name merely would not be sufficient; but that setting off individuals with their estates would be a sufficient compliance with the law. *Deane* v. *Washburn,* 17 Maine, 100; *Perry* v. *Dover,* 12 Pick., 206; *Alden* v. *Rounseville,* 7 Metc., 218; *Nye* v. *Marion,* 7 Gray, 244. But we think that a fair and practical construction of the vote in this case, under the facts stated, is, that the district was really divided by geographical bounds within the meaning of the decided cases; and that the homestead of Grindle and all the district northwest of him went one way, and the rest of the district another. The vote was to "divide school district No. 2;" of course it was to be some territorial division; and what it was to be is indicated only by the reference to Grindle. The words used were undoubtedly intended to comprehend the territory by him owned and occupied. The words "all northwest" include all the estates in the district situated northwest of that of Grindle, with the inhabitants thereon. The plaintiff's person and property fell into district No. 1. Any other construction than this would require the vote to be rejected as entirely senseless. *Plaintiff nonsuit.*

APPLETON, C. J., CUTTING, WALTON, BARROWS and DANFORTH, JJ., concurred.